UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROGER LEE WADE,

        Petitioner,

v.                                                          Case No. 2:06-cv-237
                                                               HON. ROBERT HOLMES BELL

JERI-ANN SHERRY,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Roger Lee Wade filed this petition for writ of habeas corpus challenging the validity of his state court conviction for two counts of assault with intent to commit great bodily harm less than murder, and as a second habitual offender. Petitioner was convicted after a jury trial and was sentenced to a prison term of 8 to 15 years.

Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. Defendant's conviction must be reversed because he was arrested
without a warrant, on a deficient complaint, and a probable cause
hearing was not held within 48 hours.

II.   Defendant was unconstitutionally denied counsel at the photographic array.

a. Defendant received ineffective assistance of counsel.

b. The complainants' in-court identification should have been suppressed because defendant's rights to due process were violated by an impermissibly suggestive photographic array.

c. The trial court erred in failing to order a Wade hearing.

III. The District Court abused its discretion in binding defendant over on two counts of assault with intent to do great bodily harm when only one complainant testified.

IV. The trial court abused its discretion in binding defendant over on the charge of assault with intent to do great bodily harm when there was no evidence of great bodily harm and the only injuries suffered by the complainants were bumps and bruises.

V. There was insufficient foundation for the admission of tracking dog evidence.

a. The trial court reversibly erred in failing to give a jury instruction regarding tracking dog evidence.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

    The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that his conviction should be reversed because his Fourth Amendment rights were violated at the time of his arrest and because he was not provided a probable cause hearing within 48 hours of his arrest.  In the opinion of the undersigned, Petitioner's claim is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 482.

In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas proceedings:

> Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.  *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted).  The record reveals no reason why Petitioner would have been prevented from raising his Fourth Amendment claims in the state courts.  Moreover, although

petitioner failed to preserve these issues at trial, the Michigan court rejected the claims. The court found that state law procedural rules were properly followed. The court explained:

> Defendant's argument disregards the procedural history of his case. Defendant was arrested without a warrant on June 6, 2002. The record reveals that a complaint and warrant were filed with the court on that day, that defendant was arraigned the day defendant was arrested, June 6, 2002, and assigned counsel on June 6, 2002. Further, defendant's bail was decided.

In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his constitutional rights were violated because the photographic lineup was conducted outside the presence of counsel. The Michigan Court of Appeals rejected this claim, explaining that "the right to counsel [at pretrial identifications] attaches only to corporeal identifications at or after the initiation of adversarial judicial criminal proceedings." The Supreme Court has held that the right to counsel at pretrial identification procedures applies only to corporeal lineups after the initiation of adversary judicial criminal proceedings. *Moore v. Illinois*, 434 U.S. 220 (1977). Petitioner cannot establish that the Michigan Court of Appeals' decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Similarly, the Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claim regarding the assertion that counsel should have moved to suppress the victims' identification of petitioner and for failing to request a *Wade* hearing. The Michigan Court of Appeals stated:

> Defendant also argues that his first trial attorney was ineffective for failing to move for a *Wade* hearing or suppression of the victims' identification. Our review of this issue is limited to errors apparent on the record because no *Ginther* hearing was held. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997). In order to prevail on a claim that counsel was ineffective, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). He must overcome a strong presumption that the assistance of his counsel was sound trial strategy. *Stanaway, supra; People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).
>
> The decision to move to suppress an identification or move for a *Wade* hearing is a matter of trial strategy. *People v Carr*, 141 Mich App 442, 452; 367 NW2d 407 (1985). The record does not indicate that the failure of defendant's first attorney to move for suppression or a hearing was error as opposed to sound trial strategy. At the preliminary examination, defendant's first attorney used the photographic lineup evidence to discredit Robeck. The misidentification and uncertainty at the lineup was exculpatory evidence. We note that defendant's trial counsel followed a similar tactic with both victims at trial, trying to discredit them based on their conduct at the photographic lineups and the manner in which they ultimately identified defendant. Because defendant has not overcome the strong presumption that counsel's decision was sound trial strategy, defendant's claim of ineffective assistance of counsel fails. [Footnote omitted.]

To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel

guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether the alleged failures of petitioner's trial counsel were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996). In the opinion of the undersigned, petitioner cannot show that he received ineffective assistance of counsel or that counsel acted unreasonably in pursing this particular trial strategy.

Petitioner claims that his due process rights were violated by an improperly suggestive photographic lineup. The Michigan Court of Appeals rejected this claim stating:

> We also reject defendant's claim that the photographic lineups were unduly suggestive and may have precipitated the victims' later in-court identifications. In *Moore, supra* at 226-227, the Court noted that identifications conducted before the initiation of adversarial judicial proceedings may be challenged in certain circumstances. Due

process protects an accused against the introduction of unreliable pretrial identifications obtained through unnecessarily suggestive procedures. *Id.* See also *Hickman, supra* at 607.

> In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. [*Kurylczyk, supra* at 302-303, citing *Neil v Biggers*, 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

Photographic identifications may be unduly suggestive if the police inform the victim that they have apprehended the correct person, if a witness is shown only a photograph of the defendant, or if the defendant's photograph is singled out in some manner from other photographs in a group. *People v Gray,* 457 Mich 107, 111; 577 NW2d 92 (1998).

Here, defendant does not identify how the photographic lineup was unduly suggestive, other than that he was not represented by counsel. The record at trial did not demonstrate that the victims were told that the correct person was apprehended, that the victims were shown defendant's photograph by itself, that defendant's photograph stood out from the other photographs in the array, or that the victims were informed about which picture depicted the man in custody. The record does not indicate that they were given any relevant information about the man in custody that would enable them to identify him through his photograph. Accordingly, defendant has not sustained a due process challenge to the photographic identification.

Indeed, defendant does not actually dispute that he has failed to support his claim that the photographic lineups were unduly suggestive. Rather, he argues that he was "left totally unable to establish whether the pretrial identification procedures were suggestive" because the trial court did not hold an evidentiary hearing. We disagree. Before the evidentiary portion of defendant's trial began, the trial court gave defendant a full opportunity to argue his motion. During his argument, defendant failed to make an offer of proof or provide any argument to support his position that an evidentiary hearing would produce evidence that the lineups were suggestive.

We note that defendant does not challenge the substance of the trial court's finding that, based on the prosecutor's offer of proof, there

> was an independent basis for the victim's in-court identifications. Rather, he argues that the trial court should not have made the determination based on the prosecutor's offer of proof without a hearing. Defendant cites no authority for this position. Moreover, "[t]he need to establish an independent basis for an in-court identification only arises where the pretrial identification is tainted by improper procedure or unduly suggestive comments." *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988). Defendant has not shown that the photographic identification was tainted by improper procedure or was unduly suggestive. Thus, there was no need to establish an independent basis for the in-court identifications. *Id*. at 93 (where defendant did not articulate any reason to find that the lineup procedure was improper and where nothing in the record suggested that the procedures were unduly suggestive, there was no need to establish an independent basis for the identifications). Even if an independent basis was necessary, because defendant fails to challenge the substance of the trial court's ruling that an independent basis existed, review of that ruling is inappropriate. *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999). [Footnotes omitted.]

It is petitioner's burden to demonstrate that the in-court identifications were based upon impermissible pre-trial procedure. Petitioner must demonstrate that (1) the police performed an unduly suggestive photographic lineup, and (2) the unfair suggestiveness was conducive to a "very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The court must consider several factors, including the size of the array, the manner of presentation by the officers, and the contents of the array.

Factors listed by the Supreme Court which should be weighed are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Petitioner has not set forth any factors which establish that the photo array was improper or that the Michigan Court of Appeals' decision on this issue was unreasonable.

Similarly, petitioner has failed to establish that the Michigan Court of Appeals unreasonably rejected petitioner's claim that the trial court erred by not holding a hearing on the pretrial identification issues.

Petitioner claims that errors occurred by the district court, in binding petitioner over on two counts of assault with intent to commit great bodily harm less than murder, and by the trial court, in binding petitioner over on the charge of assault with intent to commit great bodily harm less than murder, when the victims only suffered bumps and bruises. Petitioner has presented no federal issue in these claims. These are matters of state law. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed.

To the extent that petitioner may be asserting that there existed insufficient evidence to convict him of the crime, petitioner's claim also fails. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* The Michigan Court Appeals set forth the facts of the case in its opinion. The court stated:

> This case arises from the assaults of Janet Robeck and Ronda Burke. Robeck and Burke generally would go for a brief walk after work. On the night of June 6, 2002, as Robeck and Burke began their walk, they noticed a man wearing dark colored clothing with a white stripe, walking on the other side of Main Street. When Robeck and Burke reached the high school, they crossed Main Street to complete their walk on the south side. While they were walking, Robeck noticed the

man she previously saw. He was further ahead of them and crossed from the north side of Main Street to the south side. Near Weaver Street, the same man lunged out at Robeck and Burke from a crouched position behind a cement wall. He grabbed at them with outstretched arms. Robeck ducked out of the man's grasp. When she did, the man knocked Burke into the street. Burke was unable to cushion her fall and her head bounced off the pavement. She thought the man was going to kill her. She put her hands over her face and drew her knees up to protect her body. She also began screaming. Robeck heard Burke screaming and turned to see that Burke was in the roadway with the attacker crouched over her. Robeck grabbed the man's jacked and tried to push him away from Burke. At that point, the man grabbed Robeck's hair. He began punching her: she was face to face with the attacker and looked into his eyes. Both Robeck and Burke noticed that the man was well built and stocky. He had a black stocking hat on his head. Robeck believed that the man hit her more than two times. She recalled that the first punch hit her in the back of the head. The last punch hit her in the left eye and knocked her down. Robeck felt useless in her struggle against the man and thought he was going to kill her. He was punching her very hard, and the attack seemed to last "forever." Robeck observed her attacker's profile in both directions during the incident. After knocking Robeck to the ground, the attacker turned back to Burke, who believed he planned to hit her again. Before he could do so, a car approached on Main Street and the man ran away. Burke and Robeck flagged down the approaching car and received a ride to the police station. The driver of the passing car testified that she saw a person with dark clothing and a white stripe running away as Burke and Robeck approached her car. The car's passenger also testified that he saw a man with a skullcap and black clothes, who was muscular and not tall, sprint away from the area. The passenger noticed that the man's clothing reflected, consistent with having a white stripe on them.

Burke and Robeck provided a brief description of their assailant to Sergeant Randall Wright, who immediately thought of defendant. Defendant fit the description, and Wright had observed him sitting in front of the Coffee Cup restaurant on Main Street shortly before the attacks. Wright notified a patrol officer that he thought defendant lived in the Oak Creek Apartments. Defendant was apprehended at the corner of Main Street and Connie, near the entrance to the Oak Creek Apartments. He was wearing a black nylon head cap, a black sweat suit with a white stripe, and tennis shoes. Defendant was sweaty and appeared tired. He denied being "downtown" and denied perpetrating the assaults.

Additional evidence was presented that pointed to petitioner as the assailant. It is clear that the evidence was sufficient to establish that petitioner committed the crime.

Petitioner claims that the introduction of tracking dog evidence at trial violated his rights. The Michigan Court of Appeals rejected this claim, explaining:

> In order to establish the required foundation for admitting tracking-dog evidence, a prosecutor must show that the handler was qualified to use the dog, the dog was trained and accurate in tracking humans, the dog was placed on the trail where the alleged guilty party was said to have been, and the trail had not become so stale or contaminated that it was beyond the dog's competency to follow it. *Laidlaw, supra* at 93, citing *People v Harper*, 43 Mich App 500, 508; 204 NW2d 263 (1972). Here, Robert Mendham testified that he was the canine officer for the Newago County Sheriff's Department. He and his tracking dog, Razz, had been together for approximately four years and were both trained for tracking. Mendham attended five weeks of schooling with a certified trainer. He was certified in April 1999, and he and Razz continued to undergo yearly certification testing through the United States Canine Police Association. They always passed the tests, which required Razz to track an individual on a planted trail. Mendham's testimony supports the first two foundational requirements. Further, Mendham testified that Razz was placed at the intersection of Weaver Street and Main Street. Razz tracked down Weaver Street. This testimony established the third foundational requirement, and it also demonstrated Razz's accuracy because the victims testified that their attacker ran down Weaver after the attacks. This information was not known to Razz or Mendham when they began tracking. Finally, Razz and Mendham were at the scene to track the suspect at 1:40 a.m., and Razz was trained to track scents up to 2 or 2-1/2 hours old, which was within the applicable time frame. Because the testimony was sufficient to establish the requisite foundation for the admission of the tracking evidence, there was no plain error. *Carines, supra*. [Footnote omitted.]

Petitioner contends that the trial court abused its discretion when it admitted evidence where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of

whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness and, therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner cannot show that tracking dog evidence was immaterial or not relevant. In the opinion of the undersigned, petitioner cannot show that the court's admission of this evidence violated his constitutional rights. Finally, the Michigan Court of Appeals' conclusion that petitioner waived his claim that the court failed to give a limiting instruction on the tracking dog evidence constitutes a default of that issue for habeas review.

Petitioner stated that he was satisfied with the jury instructions and did not request a limiting instruction at trial.

When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324. In the opinion of the undersigned, petitioner has not set forth a valid reason to overcome his default of this issue.

Similarly, petitioner claims that the judge inaccurately considered the sentencing guidelines. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990).

Furthermore, MCL § 750.84 provides for punishment of imprisonment for a term not exceeding ten years. As a second habitual offender, MCL § 769.10, the maximum sentence increased to fifteen years. Therefore, petitioner has not set forth a federal question because his sentence was imposed within the state statutory limit. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. *E.G., Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976). If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24.

Petitioner's sentence does not exceed the statutory limit nor has petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion. Petitioner also relies on *Blakely v. Washington*, 542 U.S. 296 (2004), arguing that any increase in a sentence imposed based

on facts not submitted to a jury is unconstitutional. However, the issue presented in *Blakely* was the constitutionality of a statute which set out a guideline range of sentences, but permitted a court to impose a sentence in excess of those guidelines based on facts not submitted to a jury. In Michigan, a court does not have the authority to exceed the statutorily authorized sentence, and the sentences imposed here by the trial court do not exceed the statutorily authorized ranges. Therefore, *Blakely* is not applicable.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. In the opinion of the

undersigned, petitioner failed to show that his constitutional rights were violated by state court probable cause findings or warrant issues. Similarly, sufficient evidence existed to support petitioner's conviction. Petitioner cannot show that his constitutional rights were violated by the photographic lineup procedures, that his counsel was ineffective, or that evidence was improperly admitted at trial. Similarly, petitioner has failed to show that his constitutional rights were violated by his sentence. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

      NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated:   May 19, 2009